IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher Lamar Victoria, a/k/a Christopher Lamar Victoria, #315620, a/k/a Christopher Victoria, #341833, | ) ) ) | C/A No.: 5:24-1067-JDA-KDW |
| | ) | |
| Plaintiff, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| v. | ) | |
| | ) | |
| John Palmer and Coata Kimbrell, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Christopher Lamar Victoria, proceeding pro se, initiated this action by the filing of a Complaint on March 1, 2024. He later filed an Amended Complaint, ECF No. 12, on June 6, 2024, which is the operative pleading in this case. Plaintiff alleges Defendants violated his constitutional rights from November 1, 2023 through the filing of his Amended Complaint by housing him at McCormick Correctional Institution in a cell with lights that did not turn off at night. ECF No. 12 at 6. He alleges he tried to speak with the Lieutenant, but he was unsuccessful in remedying his situation. ECF No. 12 at 6. He further alleges his ceiling is covered in what looks like feces and mold. *Id.* On December 31, 2024, Defendants filed a Motion for Summary Judgment. ECF No. 37. Plaintiff filed a Response on January 21, 2025. ECF No. 45. Defendants filed a Reply on January 24, 2025. ECF No. 46. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation ("Report") is entered for the court's review.

I.  Factual Background

At the time Plaintiff filed his Amended Complaint, he was an inmate in the custody of the South Carolina Department of Corrections, housed at McCormick Correctional Institution ("McCormick") in the Restrictive Housing Unit (the "RHU"). Plaintiff is serving an eight-year sentence for 2nd degree burglary, petit larceny, and breaking into a motor vehicle. *See* Plaintiff's Medical Record, attached as Exhibit A to Defs.' Br., ECF No. 37-2 at 2; *see* Certificate of Inmate Status, attached as Exhibit B to Defs.' Br. at ECF No. 37-3 at 1.[1] He is currently in custody in North Carolina, facing a first-degree burglary charge. *See* Exhibits A; B.

According to the allegations in Plaintiff's Amended Complaint, from November 2023 until the filing date of the Amended Complaint, he was housed in a cell in the RHU with lights that remained on all the time, causing him to be unable to sleep. ECF No. 12 at 6. Plaintiff alleges it took four months of him complaining about the lights before "they" began turning the lights off via powerbox/fuse. *Id.* at 7. Plaintiff further alleges that when he tried to speak to the Lieutenant about the issue, "he had an attitude and ended up jacking up on me while I was in chains." *Id.* at 6.[2] Plaintiff also alleges the ceiling of his cell was covered in what looked like feces and mold, and there was a leak from the ceiling. *Id.* Finally, he alleges that there is stale air blowing into his cell which causes tissue stuck in the vent to turn brown. *Id.* at 7. Plaintiff alleges he suffered from

---

[1] Plaintiff is eligible for parole on May 16, 2025. Plaintiff's last known address was Kirkland R&E Center, C1-A-9A, 4344 Broad River Road, Columbia, SC 29210. *See* ECF No. 47. As of May 23, 2025, Plaintiff does not appear in an inmate search of the South Carolina Department of Corrections.

[2] Defendants point out that Plaintiff has filed a separate lawsuit, Civil Action Number 5:24-cv-01441-JDA-KDW, focusing on this specific allegation against Defendant Kimbrell. For this reason, Defendants assume the allegation was provided to provide additional context. However, Defendants state that to the extent he alleges a viable issue with this allegation, Defendants believe Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 8.

anxiety attacks and nosebleeds as a result of these issues, as well as headaches and sinus problems. *Id.* at 7, 9.

## II.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

A party cannot create a genuine issue of material fact solely with conclusions in his or her own argument, affidavit, or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc.Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III. Analysis

Defendants have advanced several reasons why they believe Plaintiff's claims are subject to summary judgment. Of these, Plaintiff concedes several arguments. Accordingly, the undersigned will consider each argument in turn, but not for arguments where Plaintiff does not contest the analysis.

A. Failure to Exhaust Administrative Remedies

Defendants first argue that Plaintiff properly filed a Step 1 grievance (MCCI-0694-23) which "noted the light in his cell was constantly on bright and prevented him from 'properly resting.'" *See* Affidavit of Felecia McKie, attached to Defs.' Br. at ECF No. 37-9 at 3. Defendants further agree that Plaintiff properly appealed the denial of this grievance through the use of a Step 2 grievance. *See* Defs.' Br. at 37-1 at 7; *see* McKie Aff., ECF No. 37-9 at 3. However, Defendants argue that because Plaintiff did not file any other grievances regarding the condition of his cell or

any grievance regarding a lack of medical care as a result of his listed injuries, they are entitled to summary judgment as to those claims. *Id.* at 7.

The Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).[3] Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). A defendant has the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).

In his Response, Plaintiff admits he "did not grieve the issues in question," which included the alleged mold spots and what appeared to Plaintiff to be feces, as well as the stale air blowing from a vent and the leak in a ceiling outside his cell. ECF No. 45 at 1. Indeed, Plaintiff contends

---

[3] The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)).

he "does not dispute" this argument, though he also states numerous other inmates had grieved these or similar issues but nothing was done. Aside from this statement, Plaintiff does not allege he was thwarted in participating in the grievance process or provide any additional information about the alleged grievances of other inmates. As Plaintiff did not exhaust his administrative remedies as to his claims other than the issue with the light in his cell, Defendants are entitled to summary judgment as to those claims.

B. Eleventh Amendment Immunity

Defendants next argue they are entitled to summary judgment as to any claims brought against them in their official capacity because the Eleventh Amendment and sovereign immunity bar these claims. The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens, as well as suits by citizens of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Eleventh Amendment immunity also extends to "arms of the State" and state employees acting in their official capacity. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. Jan. 9, 2019). Relatedly, the Supreme Court has held that neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

In his Response, Plaintiff also appears to concede that Defendants are entitled to summary judgment on this ground, or at least that he does not dispute the assertions made by Defendants as

to this argument. The undersigned agrees that Defendants are entitled to summary judgment as to any claims brought against them in their official capacity based on Eleventh Amendment Immunity.

    C.  Failure to State a Claim Upon Which Relief May be Granted

    Defendants next argue that Defendant Palmer is entitled to summary judgment as to the conditions of confinement claims related to moldy or unsanitary conditions, stale air, and water intrusion due to a leaky roof because Plaintiff fails to state a claim for relief in his Amended Complaint. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support [the legal conclusion]." *Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001). Courts are required to construe a complaint liberally and presume all factual allegations within the complaint are true, and all reasonable inferences made in favor of the non-moving party. *Hishon v. King*, 467 U.S. 69, 73 (1984).

    Liability under 42 U.S.C. § 1983 involves a showing that "the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). With respect to Defendant Palmer, Defendants argue that Plaintiff simply alleges he "does rounds every week[,] he knows about problems." *See* ECF No. 12 at 12. Defendants argue

this does not meet the pleading standard under Rule 8. In his Response, Plaintiff argues that Defendant Palmer was "aware" of the conditions of each cell because he made weekly rounds and the hole in the roof was visible. ECF No. 45 at 2. As an initial matter, because Plaintiff failed to properly exhaust his administrative remedies as to this claim, Defendant Palmer is entitled to summary judgment. Nevertheless, a simple allegation that Defendant Palmer made weekly rounds equates to him being aware of the specific conditions in Plaintiff's cell fails to meet the pleading standard. The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive and even harsh are part of the penalty criminal offenders pay for offenses against society. *Id.* at 347-49. The United States Supreme Court has held that prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In order to state a viable conditions-of-confinement claim an inmate must show that: (1) the conditions were objectively serious enough to pose a substantial risk of serious harm; and (2) that the prison official's state of mind was one of "deliberate indifference." *Farmer,* 511 U.S. at 834. Plaintiff does not specifically allege which Defendant he spoke to about his cell conditions. The fact that Defendant Palmer made rounds of cells does not mean he would have noticed any particular issues within the cell. Accordingly, the undersigned agrees that this bare assertion as to Defendant Palmer does not meet the pleading standard, and he is entitled to summary judgment as to these claims, to the extent these allegations were administratively exhausted.

D.  Conditions of Confinement Claim

Defendants next argue that Plaintiff fails to state a claim that he was subjected to unconstitutional conditions of confinement. Defendants argue that Plaintiff's claim is that as a result of his light not going out, he was unable to sleep for several nights while in RHU Cell 68. ECF No. 12 at 6.[4] As a result, he alleges he suffered from anxiety attacks "due to the constant illumination[,] mixed with other factors." *Id.* at 9. In his Response, Plaintiff argues that he "made aware or attempted to make aware Defendant Kimbrell of an issue with [the] light in this cell." Pl.'s Br. at 2; ECF No. 45. Plaintiff argues he was told the issue would be fixed; however, once a month went by he filed a grievance regarding the issue. *Id.* Plaintiff asserts Defendant Palmer responded that Plaintiff had not shown that "SCDC personnel failed to perform their job duties appropriately," while also advising Plaintiff to address the dorm lieutenant regarding the faulty light. *Id.* at 2-3.

The Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; *see Robinson v. California*, 370 U.S. 660, 666 (1962). Punishments implicating the Eighth

---

[4] As previously noted, the remaining conditions of confinement claims were not administratively exhausted, as acknowledged by Plaintiff, and therefore the undersigned need not consider whether he stated a claim for relief based upon these allegations. However, allegations that a plaintiff has what appeared to be mold or feces on his ceiling do not rise to the level of being "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). The "mere smell or presence of human waste or bodily fluids does not rise to the level of a constitutional violation." *Salmons v. W. Reg'l Jail Auth.*, No. 3:18-cv-1447; 2019 WL 5616916, at *6 (S.D.W. Va. Oct. 30, 2019); *see, e.g.*, *Harris v. FNU Connolly*, No. 5:14-CV-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), *aff'd*, 667 F. App'x 408 (4th Cir. 2016) (granting summary judgment where plaintiff alleged holding cell was unsanitary because of a "massive amount of urine, feces, and vomit on both the floor and walls in which the plaintiff was forced to live for 30 plus days"); *Powell v. Fed. Bureau of Prisons*, No. 1:08-cv-00199, 2009 WL 3160124, at *1 (S.D.W. Va. Sept. 25, 2009) (granting motion to dismiss where plaintiff alleged air was "saturated with the fumes of feces, the smell of urine and vomit as well as other stale body odors").

Amendment include deprivations suffered by inmates during imprisonment. *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Conditions of confinement can constitute a cruel and unusual punishment. *Id.* However, Eighth Amendment liability "must involve more than ordinary lack of due care for the prisoner's interests or safety . . . it is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)) (emphasis in original).

To prove a violation of the Eighth Amendment, a prisoner must satisfy both an objective requirement, showing that the deprivation suffered was "sufficiently serious," and a subjective component, showing that the defendant had a "sufficiently culpable state of mind," to ensure the deprivation qualifies as a punishment *Id.* (quoting *Wilson*, 501 U.S. at 298)). For claims challenging conditions of confinement, a prison official must have "criminal-law *mens rea*" demonstrated by showing either intentional conduct or criminally reckless conduct. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836-40 (1994)). Negligence does not rise to the level of deliberate indifference. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

The Constitution does not require prisons be comfortable. *Rhodes*, 452 U.S. at 349. Routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. Plaintiff alleges that he was subjected to constant overhead lighting in his cell, despite requesting to be moved or for the light to be fixed. He alleges this continued for approximately four months, and as a result, he suffered from "anxiety attacks due to the constant illumination[,] *mixed with other factors*." ECF No. 12 at 9 (emphasis added). As an initial matter, Plaintiff's own allegations suggest he suffered from anxiety attacks from at least one or more other factors aside from the faulty overhead light. Further, Defendants have provided Plaintiff's medical records.

These medical records include Plaintiff describing his sleep pattern as four hours per night on an inconsistent basis, trouble with nightmares, and sleep deprivation caused by waking up and assuming "others are calling his name," aside from stating he is unable to sleep because the lights won't turn off. *See* Plaintiff's Medical Records, attached as Exhibit A to Defs.' Br. at 1; ECF No. 37-2; Exhibit D to Defs.' Br. at 2; ECF No. 37-5; Exhibit C to Defs.' Br. at 2; ECF No. 37-6. While one record reflects Plaintiff's complaints about the overhead lights, the majority of the medical records provided to the court reveal that Plaintiff has difficulty sleeping due to nightmares and anxiety.

That issue aside, an overhead light that stayed on for a relatively short amount of time (approximately three months), while certainly annoying, does not allege a deprivation of a basic human need. *See generally Scott v. Woods*, No. 6:21-cv-03142-JD-KFM, 2022 WL 1193282, at *3 (D.S.C. Jan. 11, 2022) (finding that a cell with no overhead lighting or electrical sockets did not rise to the level of a constitutional violation). In *Wilkinson v. Austin*, the Supreme Court considered the restrictive conditions at Ohio State Penitentiary ("OSP"), where, among other conditions, inmates are required to remain in small cells with a light on at all times, and if the inmate sought to shield the light to sleep, he would be subject to further discipline. 545 U.S. 209, 214 (2005). Placement at OSP was for an indefinite period of time. *Id.* In considering whether these conditions violated a state-created liberty interest in avoiding restrictive conditions of confinement, the court stated that "while *any of these conditions standing alone might not be sufficient to create a liberty interest,* taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224 (emphasis added). The Supreme Court also noted that the duration of placement in OSP was indefinite and after an initial review, an inmate was reviewed annually. *Id.* Unlike in *Wilkinson*, Plaintiff does not contend he was either placed in

11

the RHU with a light remaining in his cell for an indefinite period, or that his light remaining on was anything other than a maintenance issue. Nor does he allege how long he was to remain in the RHU.

In viewing the evidence of record, Plaintiff fails to establish that Defendants acted with deliberate indifference. It is clear from Plaintiff's grievance record that when he complained about the overhead light, Defendants began working to rectify the issue. Defendants responded that they had made maintenance aware, and that they were working to correct the issue. Plaintiff's grievances, attached to Felecia McKie's affidavit, reflect that Plaintiff first grieved this issue on or around December 6, 2023. *See* Exhibit A attached to Ms. McKie's Affidavit, ECF No. 37-10 at 1. The grievance was received on December 13, 2023, and a month later he was provided a response indicating that maintenance was made aware of the needed repair, and a work order was submitted. *See* Exhibit A; ECF No. 37-10 at 2. Plaintiff filed another grievance at the end of January 2024 and again officers responded that maintenance was informed that they need to repair his light. It appears it took approximately two and a half months for maintenance to fix the issue.

Thus, rather than ignoring his concerns, the evidence reflects that Defendants indicated to Plaintiff that they were actively working to fix the overhead light issue. In his Response, Plaintiff alleges that Defendants had the ability to move Plaintiff to a different cell, and he was aware of other inmates being allowed to move cells. *See* Pl.'s Br. at 3; ECF No. 45. Plaintiff contends that the fact that it took three months for officers to begin turning off the breaker at night to the overhead light shows they intended to deprive him of the basic need of sleep.

Sleep is one of life's basic needs, and if a condition is designed to prevent sleep, it might violate the Eighth Amendment. *See Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). However, the record does not support a finding that Defendants were responsible for the light

12

remaining on for three months, particularly since the record establishes that they apparently advised maintenance of the issue. Nor is there any indication that one or more officers intentionally created a circumstance where the light would remain on 24 hours a day. Further, as indicated above, Plaintiff's medical records establish that his mental health issues were causing a disturbance in his sleep, rather than the overhead light. The records show that Defendants did consider Plaintiff's concerns, and though it took longer than Plaintiff felt necessary, Defendants acted to rectify his issue. At most, it appears Defendants may have been negligent in proactively following up with maintenance to ensure the light worked properly; however, Plaintiff has failed to establish Defendants' actions establish conduct which constitutes deliberate indifference. Accordingly, the undersigned recommends granting summary judgment as to this claim.

E.  Plaintiff's Claim is Barred by the PLRA

Defendants argue that Plaintiff's claim regarding the light in his cell is barred by the PLRA because he did not suffer a physical injury. Plaintiff disagrees and argues that some violations result in what amounts to "torture." Pl.'s Br. at 4; ECF No. 45. He further cites to a case, *Hudson v. McMilian*, 503 U.S. 1 (1992) for the proposition that a showing of malicious or sadistic intent is sufficient for his claim(s). In *Hudson*, the Supreme Court discussed injury in the excessive force context and noted that when prison officials "maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident." 503 U.S. at 9. Plaintiff's claim is not one for excessive force, and in any event, Plaintiff has not alleged any material facts showing malicious or sadistic intent to cause harm.

Pursuant to the PLRA, 42 U.S.C. §1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual

act." To demonstrate an extreme deprivation under the Eighth Amendment, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions" or demonstrate a substantial risk of serious harm resulting from the exposure to the challenged conditions. *De'Lonta v. Angelone*, 330 F.3d 630, 633-634 (4th Cir. 2003). The "physical injury requirement is not a bar to filing suit;" rather, it is only a limitation on recovery, limiting a prisoner from recovering damages when no physical injury is shown. *Mitchum v. Austin*, No. 9:21-cv-02168-TLW-MHC, 2022 WL 3908776, at *6, n. 7 (D.S.C. July 26, 2022), *report and recommendation adopted*, No. 9:21-CV-02168-TLW, 2022 WL 3908662 (D.S.C. Aug. 30, 2022). To the extent Plaintiff is asserting emotional injury stemming from the broken light, his claims must fail as he has not shown sustained physical injury resulting from the alleged actions of Defendants. *See Mitchum*, 2022 WL 3908776, at *6 (D.S.C. July 26, 2022) (citing *Jones v. Price*, 696 F. Supp. 2d 618, 624 (N.D.W. Va. 2010) ("Absent a showing of physical injury, § 1997e(e) bars an inmate from seeking compensatory damages in all federal civil actions alleging constitutional violations and mental or emotional injuries.").

Plaintiff alleges he suffered anxiety attacks causing him to seek mental health, as well as nosebleeds, headaches, and sinus problems. ECF No. 12 at 9. It appears the sinus issues may be related to his claims regarding mold in his room, and suffering from nosebleeds could be liberally construed as a physical injury; however, these claims were not exhausted. Further, because the undersigned recommends granting summary judgment to Defendants as to Plaintiff's only exhausted claim, he is thereby precluded from a recovery for compensatory damages. Further, as argued by Defendants, to the extent Plaintiff seeks punitive damages, such recovery is barred because the undersigned recommends granting summary judgment as to any compensatory damages award claims. *See People Helpers Found. Inc. v. City of Richmond, Va.*, 12 F.3d 1321,

1327 (4th Cir. 1993) (discussing punitive damages in the context of the Federal Fair Housing Act but noting that "[i]n the absence of a specific statutory directive on this issue, federal courts have chosen to apply the majority rule that punitive damages are not recoverable when compensatory damages have not been awarded.").

F.  Qualified Immunity

Defendants argue they are entitled to qualified immunity as to any claims brought against the Defendants in their individual capacities. Plaintiff argues in response that the correctional facility has a policy of lights turning off at a certain time, and officers are aware that inmates are not supposed to have their lights on all the time. Pl.'s Br. at 5; ECF No. 45. His argument is thus that Defendants should reasonably know that lights being on all the time in a cell is harmful to an inmate.

When a qualified immunity defense is raised, the courts apply a two-part test. First, the court must determine whether the facts viewed in the plaintiff's favor make out a violation of one's constitutional rights, and second, whether the violated right was clearly established at that time. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 233, 231 (2009)).

The Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the [officer] bears the burden on the second prong. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)); *see also Mays v. Sprinkle*, 992. F.3d 295, 302 n.5 (4th Cir. 2021) (explaining that plaintiff has the burden of proof to show a constitutional violation, while defendant must show the violation was not clearly established). To be a clearly established right, it must be sufficiently clear that a reasonable official would have understood that what he or she is or was

15

doing violates that right. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). In order to perform this analysis, a court needs to pinpoint the constitutional right at issue in order to determine whether it is clearly established. *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) (citing *Halcomb v. Ravenell*, 992 F.3d 316, 319-20 (4th Cir. 2021)). In so doing, a court must avoid defining the right at a "high level of generality" because the question is whether the "violative nature of *particular* conduct is clearly established." *Id.* (emphasis in original).

There is no requirement that the conduct in question has been previously held as unlawful for a "reasonable" official to be on notice that his or her conduct violated that right. *Id.* at 445-446 (citing *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016)). Qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law." *Taylor*, 575 U.S. at 825 (citing *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011)).

Here, the undersigned recommends finding that Defendants' actions did not amount to a constitutional violation; thus, qualified immunity is appropriate. As to Plaintiff's argument about the correctional facility having a policy regarding lights turning off at a certain time of the day, while this may be true, the issue as presented was the delay in his light being fixed by maintenance. Plaintiff did not allege Defendants would deliberately turn his lights back on, and indeed he notes that someone eventually used the powerbox/fuse to turn his lights off at night. For the reasons presented, the undersigned recommends finding Defendants are entitled to qualified immunity.

IV. Conclusion and Recommendation

For the reasons outlined above, the undersigned recommends granting Defendants' Motion for Summary Judgment, ECF No. 37.

IT IS SO RECOMMENDED.

May 23, 2025                                             Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).